UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LARISSA TIBOKO-TIFUH,

                          Petitioner,

v.

KRISTI NOEM, *et al.*,

                          Respondents.

Case No.:  26-cv-1215-JO-DEB

**ORDER GRANTING PETITIONER'S MOTION TO ENFORCE COMPLIANCE [DKT. 8]**

On March 24, 2026, Petitioner Larissa Tiboko-Tifuh moved to enforce the Court's March 12, 2026 Order (Dkt. 6), which required a bond hearing within seven days in light of her prolonged mandatory detention under 8 U.S.C. § 1225(b)(1).  Dkt. 8.  That order mandated Petitioner's release unless the government demonstrated by clear and convincing evidence that she posed "a danger to the community or a flight risk that cannot reasonably be addressed by bond or conditional release."  Dkt. 6 ¶ 1.  Petitioner contends that the Immigration Judge ("IJ") violated the Court's order by finding that she posed a flight risk and ordering continued detention without requiring the government to bear the burden of proof and meet the clear and convincing evidence standard.  Dkt. 8.

1

On April 2, 2026, the Court held oral argument on Petitioner's motion to enforce compliance.

1. **Jurisdiction:** The Court finds that it has "continuing jurisdiction to enforce [its] injunctions," *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994), one that extends to reviewing whether an IJ correctly applied the legal standard ordered by the Court at a bond hearing. Although 8 U.S.C. § 1252(a)(2)(B)(ii)[1] bars judicial review of purely discretionary IJ determinations, it does not bar review of "mixed question[s] of law and fact," where the analysis and outcome is governed by a legal standard that must be correctly applied to the presented facts. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). The Ninth Circuit made this distinction in allowing district court review of dangerousness determinations made at bond hearings, concluding that an IJ's assessment of a noncitizen's dangerousness is a reviewable "mixed question of law and fact" because it is guided by the nine non-exhaustive factors identified by the Board of Immigration Appeals ("BIA") in *Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006). *Id.* at 782–83. Although the *Guerra* standard is "malleable and involves agency discretion"—permitting the IJ to weigh dangerousness based on "any or all" of the nine factors—it nonetheless provides a governing legal framework that identifies relevant considerations for the IJ to evaluate before determining dangerousness and allows a reviewing court to assess whether that standard was correctly applied. *Id.* Flight-risk determinations at bond hearings are no different. The same *Guerra* factors that guide dangerousness assessments also inform the flight-risk analysis, allowing a reviewing court to assess whether the IJ properly applied that legal standard to the facts. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (in making the flight-risk

---

[1] 8 U.S.C. § 1252(a)(2)(B)(ii) strips jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [8 U.S.C. §§ 1151–1381] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."

26-cv-1215-JO-DEB

determination, the IJ considers various *Guerra* factors, including the individual's ties to the United States and history of immigration violations).  This renders the flight-risk determination a reviewable "mixed question of law and fact," rather than an unreviewable exercise of pure discretion.  *See Miri v. Bondi, et al.*, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, *5 (C.D. Cal. Mar. 5, 2026) ("Given that the IJ is to consider the same factors when determining flight risk as it is when determining dangerousness, it is clear to this Court that the determination of flight risk is also a mixed question of law and fact which is reviewable by the district court as a question of law.").  Accordingly, § 1252(a)(2)(B)(ii) does not strip the Court of jurisdiction to assess compliance with its own order, where doing so entails reviewing a "mixed question of law and fact" concerning the IJ's application of the *Guerra* framework to the flight-risk determination.  *See Leonardo v. Crawford*, 646 F.3d 1157, 1160–61 (9th Cir. 2011) (a district court retains jurisdiction to "review compliance with its earlier order conditionally granting habeas relief"); *Sales v. Johnson*, No. 16-CV-01745-EDL, 2017 WL 6855827, *4–*6 (N.D. Cal. Sept. 20, 2017) (finding jurisdiction to review whether an IJ complied with the court's order to apply the correct legal standard at a bond hearing); *Garcia Ortiz v. Henkey*, No. 1:26-CV-00043-BLW, 2026 WL 948275, at *2 (D. Idaho Apr. 7, 2026) (collecting cases finding same).

2. **Violation of Court Order**: The Court finds that the IJ violated the March 16, 2026 Order by concluding Petitioner was a flight risk without placing the burden on the government and applying the clear and convincing standard. Dkt. 6. To demonstrate flight risk under the clear and convincing evidence standard, the government must show that it is "highly probable" that Petitioner will fail to appear at future proceedings. *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc); *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (under the standard, evidence must "instantly tilt the evidentiary scales in the affirmative when weighted against the evidence . . . offered in opposition").  In making that determination, the IJ

considers factors such as the individual's (1) existence of a fixed address in the United States upon release; (2) length of residence in the country; (3) family ties in the United States and potential for permanent residence in the country; (4) employment history; (5) record of appearance in court; (6) criminal record; (7) history of immigration violations; (8) any attempts to flee prosecution or otherwise escape from the authorities; and (9) manner of entry to the country. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (discussing factors relevant to an IJ's flight risk inquiry of a detainee); *see also Singh v. Holder*, 638 F.3d 1196, 1206 n. 5 (9th Cir. 2011) ("*Guerra* discusses nine factors that, 'Immigration Judges may look to . . . in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate.'"). Where the record evidence regarding flight risk or dangerousness falls short of the required standard, the government does not carry its burden and cannot prevail. *See Singh*, 638 F.3d at 1205 (equivocal evidence of dangerousness from both parties is insufficient to satisfy the clear and convincing standard).

3. Here, the IJ's flight-risk finding—based on no evidence of flight risk beyond Petitioner's manner of entry and despite a body of evidence to the contrary—compels the conclusion that he failed to hold the government to the clear and convincing evidence standard ordered by this Court.[2] The government presented only two documents at the bond hearing: (1) a Notice to Appear initiating Petitioner's removal proceedings; and (2) a Form I-213, Record of Deportable/Inadmissible Alien. *See* Dkt. 8, Ex. A ¶ 7; Dkt. 4-1 at 2–4, 9–12. Aside from noting that Petitioner entered without inspection and was later apprehended, these documents contain no other facts bearing on her likelihood of appearing at

---

[2] The Court relies on the factual allegations set forth in Vilena Ramini's declaration, Dkt. 8, Ex. A, as Respondents have neither opposed these allegations, nor challenged the declarant's credibility in any way. For example, they have not submitted a transcript of the bond hearing or submitted any other evidence to rebut or undermine Petitioner's account of what occurred.

4

26-cv-1215-JO-DEB

future proceedings. *Id.* Even assuming the IJ relied on Petitioner's manner of entry (which the record does not show), that circumstance alone does not meaningfully distinguish her as unreliable or likely to evade law enforcement. Entry without inspection is common among asylum seekers; absent individualized evidence regarding the particular circumstances surrounding Petitioner's entry or other evidence of past noncompliance, it is insufficient to support a reasonable inference of Petitioner's tendency toward future nonappearance. *See Singh*, 638 F.3d at 1205 (evidence that is "common to all detainees" fails to meet the clear and convincing standard); *Mejia v. Bondi*, No. CV 26-1592, 2026 WL 752560, *4 (D.N.J. Mar. 17, 2026) (generalized assumptions about an individual's manner of entry, without a meaningful consideration of their particular circumstances, would effectively render the bond framework meaningless); *see also Matter of Patel*, 15 I&N Dec. 666, 666–67 (BIA 1976) (rejecting IJ's sole reliance on noncitizen's visa overstay because doing so "could result in requiring a bond of almost every alien who is held in deportation proceedings").

4. Even if such scant evidence could support an inference of flight risk, it was outweighed by evidence submitted by Petitioner. Petitioner submitted a 36-page bond packet addressing multiple *Guerra* factors and affirmatively demonstrating her likelihood of future appearance. Dkt. 8, Ex. A ¶¶ 4–5. She provided evidence of a verified residence where she would live upon release and could be contacted, as well as a nine-month record with no history of criminal conduct or noncompliance during immigration detention, all of which indicate stability and her reliability upon release. *Id.* She also presented evidence of community ties in the form of a financially secure sponsor committed to supporting her attendance at future proceedings, further reducing any risk of future nonappearance. *Id.* Her pre-hearing statement relating that (1) she fled persecution and torture by the Cameroonian military; (2) her colleagues were killed; and (3) she was previously kidnapped, further evinces her personal incentive to remain in the United States and pursue her asylum claim.

26-cv-1215-JO-DEB

5. The IJ concluded that Petitioner presented a flight risk without engaging with the evidence presented by both sides or explaining how the government's limited evidence on manner of entry outweighed Petitioner's more significant showing. Instead, the IJ rested his flight-risk finding on speculation that Petitioner was unlikely to succeed on appeal and would therefore have nothing to "come back for," an unsupported inference that cannot take the place of evidence or satisfy the clear and convincing evidentiary burden ordered by this Court and required under Ninth Circuit law. Dkt. 8, Ex. A ¶¶ 11, 13; *see Garcia Ortiz*, 2026 WL 948275, at *3–*4 (finding that the clear and convincing burden was not properly placed on the government where the IJ relied on an "unjustified inference" that a police report would have demonstrated the detainee's dangerousness).

6. Where the government prevails after presenting virtually no individualized evidence of flight risk, with no explanation from the IJ as to why he disregarded Petitioner's substantial evidence to the contrary, only one conclusion follows: the IJ did not place the burden on the government at all, much less to the clear and convincing evidence standard. *See Yepes-Prado v. U.S. I.N.S.*, 10 F.3d 1363, 1370 (9th Cir. 1993), *as amended* (Nov. 12, 1993) (finding legal error where the IJ "failed to offer a *reasoned* explanation of why the only adverse factor . . . outweighed all of the equities in [noncitizen's] favor") (emphasis original); *Watkins v. I.N.S.*, 63 F.3d 844, 849 (9th Cir. 1995) (BIA committed legal error by relying on an unsupported conclusion with no explanation despite "strong evidence to the contrary"); *Saldana v. INS*, 762 F.2d 824, 827 (9th Cir. 1985) (BIA commits legal error when it "distorts or disregards important aspects of the alien's claim"). Because the IJ neither placed the burden on the government nor applied the correct legal standard, Respondents failed to provide Petitioner with a compliant bond hearing required by the March 16, 2026 Order.

7. **Administrative Exhaustion:** The Court declines to first require BIA review of the IJ's bond denial because doing so would subject Petitioner to irreparable injury and prolong the very unconstitutional detention the Court ordered to cease.

6

26-cv-1215-JO-DEB

Administrative exhaustion is not statutorily required in § 2241 habeas proceedings, including when enforcing injunctive orders issued in those cases. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts however may impose exhaustion as a prudential requirement where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017). Even where those factors are satisfied, prudential exhaustion may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted).

8. Although the government urges that the *Puga* factors favor requiring Petitioner to exhaust her administrative remedies before the BIA, the Court is doubtful that agency expertise is necessary to resolve Petitioner's challenge to the bond determination or that BIA review would likely correct the IJ's errors. Dkt. 10 at 4. First, the core issues here—dangerousness and flight risk—are not uniquely within the BIA's expertise. Federal courts routinely make independent detention determinations and assess many of the same considerations relevant to immigration bond proceedings, including criminal history, prior conduct, family and community ties, length of residence, and record of appearance at court proceedings. *See United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990) (requiring district courts to independently assess danger and risk of nonappearance on *de novo* review). This is particularly true in this District, where the Court regularly adjudicates detention and bail determinations involving noncitizens. *See, e.g.*, *United States v. Quintero*, No. 19CR4504-H, 2019 WL 7343478 (S.D. Cal. Dec. 31, 2019) (conducting *de novo*

26-cv-1215-JO-DEB

review of a detention order for a noncitizen charged with illegal reentry and evaluating prior removals, family ties, criminal history, and risk of nonappearance). Second, and more importantly, the Court has serious doubts that an appeal to the BIA would provide a meaningful opportunity to correct the IJ's errors. As another court in this District recently observed, the BIA appears to have largely ceased functioning as a meaningful check on lower-level agency errors, instead upholding 97% of all immigration appeals in 2025, including bond determinations, a rate exceeding the 16-year historical average by at least 30 percentage points. *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, *3 n. 2 (S.D. Cal. Apr. 16, 2026) (citing Ximena Bustillo & Rahul Mukherjee, *An Immigration Court Few Have Heard of is Quietly Shaping Policy Behind the Scenes*, NPR (Mar. 20, 2026), https://www.npr.org/2026/03/20/nx-s1-5707535/trump-immigration-detention-appeals-board-deportation); *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) (given the unprecedented denial rate of noncitizen appeals, finding that the BIA's position appears to be "already set" and that appeal will "very likely" be a foregone conclusion). Given this dramatic shift in the BIA's recent practices, the Court cannot conclude that it would do more than "rubberstamp IJ bond denials and facilitate noncitizen removal." *Perez Velasquez*, 2026 WL 1042479, at *3.

9. Even if the *Puga* factors supported imposing further exhaustion, the Court would waive this requirement because it would prolong Petitioner's unconstitutional detention, both causing irreparable injury and rendering this Court's previous order effectively futile. Petitioner has already endured a prolonged detention without a bond hearing, one that the government has not justified with any legitimate interest. *See* Dkt. 5 (Court's March 12, 2026 minute order finding that Petitioner's nine-month detention without a bond hearing gravely risks erroneous deprivation of her liberty interest, "especially here when the record contains no evidence . . . that the government has another legitimate interest in her continued detention."). The Court

26-cv-1215-JO-DEB

ordered an immediate bond hearing to remedy that constitutional violation by requiring the government to either justify continued detention on grounds of flight risk or danger to the public, or release Petitioner if it could not. That hearing has not occurred by the date ordered—perhaps in form, but not in substance—meaning each additional day Petitioner spends at Otay Mesa Detention Center constitutes further irreparable injury of unconstitutional detention. The Court therefore declines to require Petitioner to pursue BIA review before granting relief, as it would likely result in weeks or months of further detention and perpetuate the very harm the Court's order was designed to prevent.[3]

10. **Remedy:** The Court's previous order required Respondents to release Petitioner if a compliant hearing did not occur by March 19, 2026. As discussed above, the bond hearing on March 17, 2026 did not comply with that order. Dkt. 6. Because Petitioner remains subject to unlawful prolonged detention, the appropriate remedy based on both habeas principles and the Court's prior order is her immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody."). Accordingly, the Court grants

---

[3]    Indeed, courts across the country have recognized that pursuing BIA review will prolong detention by months, causing irreparable injury to Petitioner and rendering any relief effectively meaningless. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) (according to the Executive Office for Immigration Review's own data, the BIA appeals process for bond hearings takes an "average processing time of 204 days" in 2024); *Villalta v. Sessions*, No. 17-CV-05390-LHK, 2017 WL 4355182, *3–*4 (N.D. Cal. Oct. 2, 2017) (waiving administrative exhaustion given Petitioner's undisputed contention that the BIA "often takes four months or more to decide on appeal"); *Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, *8 (E.D. Cal. Oct. 22, 2025) (waiving exhaustion based on estimate that "it will take up to six months to receive a decision" on the IJ's bond determination); *Hechavarria v. Whitaker*, 358 F.Supp.3d 227, 237 (W.D.N.Y. Jan. 16, 2019) (noting that due to "delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: "prolonged detention without due process during lengthy and backlogged removal proceedings").

26-cv-1215-JO-DEB

the motion to enforce compliance [Dkt. 8] and orders Petitioner's immediate release.[4]

**IT IS SO ORDERED.**

Dated: June 4, 2026

Honorable Jinsook Ohta
United States District Judge

---

[4]   For the reasons stated above, the Court issued an order releasing Petitioner from custody on April 2, 2026.  This Order sets forth the Court's reasoning.

26-cv-1215-JO-DEB